487 So.2d 561 (1986)
Mary A. GLEASON
v.
C.J. BLACHE, et al.
No. CA-4779.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1986.
*562 Mary A. Gleason, in pro. per.
James A. McGraw, Denise A. Nagel, Herman Robinson, Frank T. Scott, Jr., Bernard J. Francis, Sr., Office of Employment Security, Baton Rouge, for Administrator, Office of Employment Security of the Dept. of Labor, defendant-appellee.
Before GULOTTA, SCHOTT and BARRY, JJ.
BARRY, Judge.
A worker appeals her disqualification from unemployment benefits because she quit work due to a religious conflict.
Mary Gleason worked as a porter at Lakeside Shopping Center almost three years. During at least the first six months the porters wore clothing of their choice, but sometime thereafter a pants and shirt uniform became mandatory. Meanwhile, Gleason converted to a religion which taught that women should not wear pants. During the last year at work she complained to her supervisor, Donnovan Thurman, and superintendent, Jim Bates, that she "had to get out of the pants."
Gleason testified that prior to her vacation in June, 1983 Thurman said she could wear a dress when she returned. However, Thurman stated he told Gleason he would have to check with the manager. Thurman called Gleason during her vacation and advised that the dress requirement must be complied with. Although Gleason offered to buy a dress uniform the management would not allow an exception. She quit.
Gleason applied for unemployment compensation specifying that she left work because of religious reasons. She was disqualified as of June 24, 1983[1] because she quit work without good cause. The appeals referee concluded she left because of personal religious convictions and affirmed the disqualification. The Board of Review affirmed as did the district court.
Gleason claims she had to leave work because of her religion. The state concedes Gleason resigned due to her religion, but contends that constitutes a personal reason which is not good cause under the statute.
La.R.S. 23:1601(1) provides that an individual shall be disqualified if the administrator finds "he has left his employment from a base period or subsequent employer without good cause connected with his employment."
Our review is limited to whether the facts are supported by the evidence and justify the action taken as a matter of law. La.R.S. 23:1634; Southeastern Louisiana University v. Shelton, 431 So.2d 432 (La. App. 1st Cir, 1983); Black v. Sumrall, 413 So.2d 252 (La.App. 4th Cir.1982).
The term "good cause connected with his employment" has been interpreted to mean cause relating to working conditions, ability of the employee to continue the employment, availability of transportation to and from work, and other factors which affect the employee's ability or right to continue work. McDonald v. Lockwood, 424 So.2d 356 (La.App. 2d Cir.1982), quoting from McGraw v. Director of Postal Data Center, 319 So.2d 797, 799 (La.App. 1st Cir. 1975).
Personal reasons for resigning employment do not constitute good cause connected with employment. Louisiana Department of Corrections v. Administrator, Louisiana Office of Employment Security, 457 So.2d 825 (La.App. 1st Cir. 1984); Vidrine v. Louisiana Division of Employment Security, 326 So.2d 385 (La. App. 3rd Cir.1976). It is good cause if the work becomes unsuitable due to unanticipated working conditions. Hayes v. State, *563 Office of Employment Security, 467 So.2d 175 (La.App. 3rd Cir.1985).
At the administrative hearing Gleason testified that her religion did not permit her to wear pants. She reaffirmed her offer to buy a dress uniform since it was imperative to "get out of pants." For months she talked to her supervisor and the manager before resigning and the supervisor confirmed she quit because of her religion. The appeals referee stated the issue was Gleason's leaving work due to a personal consideration, i.e., she would not wear slacks for religious reasons.
The referee noted Gleason had worn the pants uniform for 2½ years. The date of Gleason's religious conversion was never established although at one point she said about two years earlier. Gleason said she needed her job and continued to work under the belief she would be permitted to wear a dress uniform.
Our query is whether the denial of unemployment compensation violated Gleason's First Amendment right to the free exercise of religion under U.S. Const. Amend. I; La. Const. Art. I, § 8.
In Thomas v. Review Board of Indiana Employment Security Division, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), the U.S. Supreme Court confronted this issue. Eddie Thomas, a Jehovah's Witness whose religion forbade involvement in armaments, had been assigned to produce turrets for military tanks. Thomas resigned and was denied unemployment compensation under the Indiana Statute.[2] The referee found Thomas resigned due to his religious convictions, but concluded that did not constitute "good cause in connection with work." The Court of Appeals reversed, but the Indiana Supreme Court said good cause which justified voluntary termination must be job-related, objective in character, and held Thomas' belief was a personal philosophical choice. The court said that termination motivated by religion is not good cause objectively related to work and declared denial of benefits would create only an indirect burden on Thomas' free exercise of religion and was justified by the legitimate state interest in preserving the integrity of the insurance fund and maintaining a stable work force. The court also felt that awarding benefits for voluntary termination prompted by religious reasons and denying benefits for termination for nonreligious personal reasons would violate the Establishment Clause of the First Amendment.
The U.S. Supreme Court noted that the function of a reviewing court is to determine whether there was an appropriate finding that the claimant resigned because of an honest conviction that work was forbidden due to religion and held that Thomas justifiably quit for religious reasons.
The Court relied heavily on Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) where in the majority held that South Carolina unemployment benefits could not be denied to a Seventh Day Adventist because she refused to work on Saturday due to religious beliefs. The High Court reversed the South Carolina Supreme Court which had upheld lower decisions that the claimant was ineligible because she had "failed, without good cause ... to accept available suitable work...." S.C.Code Tit. 68 § 68-114(3)(a)(ii) as quoted in Sherbert v. Verner, 374 U.S. at 400, 83 S.Ct. at 1791-92, n. 3. In analogizing Thomas' choice to that of Sherbert (between fidelity to religious belief or cessation of work) the Court found a coercive impact upon the claimants:
Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate *564 his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial. 450 U.S. at 717-718, 101 S.Ct. at 1432.
The U.S. Supreme Court declared that the state must justify any inroad on religious liberty by showing it is the least restrictive means of achieving some compelling state interest. The two purposes urged by the state were: 1) to avoid widespread unemployment and the consequent burden on the fund if people were allowed to resign from jobs for personal reasons[3]; 2) to avoid a detailed probing into job applicants' religious beliefs by employers. The Court discounted both arguments and found no compelling state interest to justify the burden upon Thomas' religious liberty.
The Supreme Court similarly discounted the Establishment Clause argument by stating that its holding did not foster the "establishment" of any religion, but reflected the governmental obligation of neutrality in the face of religious differences.
Gleason has no attorney, hence no argument relating to First Amendment rights has been made. She simplistically states that she did not quit her job; she had to "get out of the pants for religious reasons." In light of Thomas and Sherbert we are compelled to consider whether her right to free exercise of religion has been violated. Unfortunately, the record is void of essential information to make that determination.
Gleason's religious denomination is not identified. It is impossible to determine if her belief and religion justify a First Amendment exception to permit a finding of "good cause" to qualify for benefits. Tribe, American Constitutional Law, 859-65 (1978).
The state had no opportunity to argue compelling state interests. We therefore reverse the denial of unemployment benefits and remand for additional evidence to be taken before the Board of Review relating to claimant's right to free exercise of religion and further proceedings by the Board pursuant to R.S. 23:1634 B and consistent with Melady v. Louisiana Board of Review, 375 So.2d 760 (La.App. 4th Cir. 1979).
REVERSED: REMANDED.
NOTES
[1] Although the disqualification date was listed as June 24, 1983 because that was the last day she worked, Lakeside Shopping Center paid her through July 4, 1983 because of vacation time.
[2] The statute at issue, Indiana Code § 22-4-15-1 (Supp.1978), as quoted 450 U.S. at 709, 101 S.Ct. at 1428, n. 1, provided that "an individual who has voluntarily left his employment without good cause in connection with the work or who was discharged from his employment for just cause shall be ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred...."
[3] A similar interest advanced and rejected in Sherbert v. Verner, supra, focused upon the integrity of the insurance fund. See Thomas, 450 U.S. at 718, 101 S.Ct. at 1432, n. 12.